### FIRST NATIONAL BANK *v.* J. S. SOLOMON.

1. ATTACHMENT. *Intervention by creditor. Issue. Code* 1892, § 174.

Under § 174, code 1892, an intervening creditor in attachment, instead of being confined, as under the act of 1884 (Laws, p. 76), to contesting in defendant's stead the grounds of attachment, may aver that such grounds are untrue, or that the attachment was sued out by collusion between plaintiff and defendant, or that the debt claimed by plaintiff is, in whole or in part, fictitious; and the sole issue to be tried is the truth of the averments of the petition.

2. SAME. *Issue to be tried. Objection by intervener.*

Hence, the intervener cannot take advantage of defects in the declaration or attachment writ.

3. SAME. *Intervention. Nature of proceeding.*

The issue presented is between the intervener, proceeding in his own name, and the plaintiff. Defendant is not a party, and is not concluded by a judgment in favor of plaintiff as against the intervener.

4. SAME. *Plaintiff's debt. Part not due. Objection by intervener.*

The intervener cannot defeat the whole attachment by showing that a part only of the debt is not due, the purpose of § 174, code 1892, being to afford him protection only to the extent that he avers and proves that the debt is not due.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

Appellee, J. S. Solomon, sued out an attachment against Lichenstein & Metzger for $300, alleged to be due, and the writ was levied on certain merchandise. Defendants, by their plea, traversed the grounds of the attachment, but before any disposition thereof, the First National Bank of Meridian, Pollock & Co. and Lowenstein Bros. obtained leave to intervene, and filed a petition under § 174, code 1892, alleging that they were creditors of defendant, that plaintiff's debt was fictitious and simulated in whole or in part, and

that the attachment was sued out by collusion between plaintiff and defendants. Plaintiff traversed the allegations of the petition, and the issue thus presented proceeded to trial. When plaintiff offered to read his amended declaration the interveners objected, because it had not been properly filed, and because it set up a different cause of action from that stated in the original declaration. This objection, as well as a motion by the interveners to strike the amended declaration from the files, was overruled. The interveners then moved to quash the writ of attachment, because the affidavit was for a debt of $300 as being due, whereas, the amended declaration demanded only $255, and because the writ of attachment combined a debt due with one not due, and was sued out on a ground not authorized by law. This motion was also overruled.

It is unnecessary to set out the evidence. There was a verdict and judgment for plaintiff for $255.50. Motion for new trial overruled, and interveners appeal.

*Miller & Baskin* and *Hamm, Witherspoon & Witherspoon,* for appellant,

Filed a lengthy brief, discussing mainly matters of controversy which, in the view of the court, exist only between the plaintiff and defendant, and, as to the charges made in the petition for intervention, contending that, as it was shown that a part of the debt sued for was not due, the judgment should have been for the interveners. Their argument on the question of fact raised by the petition, in view of the opinion, is omitted.

*Cochran & Bozeman,* for appellee.

The intervener does not stand in the shoes of the defendant. The only issue to be tried is that made by the averments of his petition. *Bank* v. *Cochran, ante,* p. 175. If part of the debt be not due, the judgment in favor of plaintiff must be limited to what is due, and only enough of the prop-

erty sold to satisfy it. The writ of attachment should not be quashed and the entire attachment defeated.

CAMPBELL, C. J., delivered the opinion of the court.

This appeal is without merit. The appellants, as inter-veners in the attachment suit, had no concern with any matter between the parties plaintiff and defendant not em-braced in their petition for intervention, which avers that the debt attached for was fictitious and simulated, in whole or in part, and that the writ was issued by collusion between the parties for the purpose of hindering, delaying or defraud-ing the creditors of the defendants. With no other matter of the litigation between the parties to the attachment did the interveners have any thing to do. *Bank* v. *Cochran, ante,* p. 175.

Therefore, the objection by the interveners to the amended declaration, and their motion to quash the attachment, on the ground of the joinder of a debt due with debts not due, and the variance between the amount set up in the affidavit and the declaration, were properly disregarded. The court rightly refused to instruct, as requested by the interveners, that, if any part of the amount attached for was not in fact due, that caused the whole attachment to fall. To so rule would be a perversion of the statute, the purpose of which is to enable the intervening creditor to protect himself by defeating the attachment to the extent that it is for what is not due.

The instruction asked by the interveners, marked in the transcript No. 3, was properly refused, only because there is no evidence that the attachment was sued out by fraud and collusion between the parties sufficient to uphold a verdict to that effect. There is no error in the action of the court upon the instructions, and the proper result was reached in the circuit court on the merits of the case.

This case, and others which have come before us since the code of 1892, convince us that the change made in the law,

applicable to intervention by creditors in attachment suits
by the code, has not been noted. The act of 1884 on this
subject (Laws, p. 76) provided that a creditor of a defendant
in attachment might intervene and contest the grounds on
which the attachment was sued out, by plea in abatement, if
the defendant did not do so, in which case the creditor inter-
vening might introduce testimony in behalf of the defendant.
In other words, the intervener might traverse and defend for
the defendant, if he did not, by pleading in abatement. By
§ 4 of that act, the intervening creditor complying with its
terms was admitted to defend the action in the name of the
defendant. Section 2 provided for traversing the grounds
of the attachment, and sustaining that defense; and § 4 pro-
vided for defending the suit in the name of the defendant,
and contesting the right of the plaintiff to recover what he
claimed.

By § 174, code 1892, a creditor of the defendant in attach-
ment may aver by petition, sworn to, that the grounds of the
attachment are untrue, or that the attachment was sued out
by collusion between the plaintiff and defendant, or that the
debt claimed by the plaintiff, in whole or in part, is fictitious
or simulated, and " may intervene and make defense, and, in
such case, the facts stated in the petition shall be tried," and
provision is made for a bond conditioned to pay the costs of
the trial "in case *the issue be found against him.*" Manifestly
the contemplation is of an issue on the averments of the
petition between the intervener and the plaintiff in the at-
tachment. The petition presents the facts to be tried, and
makes an issue on them with the plaintiff to be tried, and
the bond for costs is payable to the plaintiff, and the costs
are to go against the intervener, if this issue is found against
him. To this issue the defendant in attachment is not a
party. It is not conducted in his name, and may be quite
independent of him. If the averment of the petition is a
denial of the grounds of attachment, or that the claim of the
plaintiff is fictitious or simulated, in whole or in part, the

defendant in attachment might welcome the intervening creditor as an ally to aid his efforts to defeat the attaching creditor, but if the petition avers fraud or collusion between the parties to the attachment, amity between the intervener and the defendant in attachment could hardly be expected, if the defendant was a decent man. The clause, "may intervene and make defense," in § 174, by itself, would carry the idea contained in the act of 1884 of defending in the name and stead of the defendant, but the immediate addition of the clause, " and, in such case, the facts stated in the petition shall be tried," shows what is meant by "and make defense;" and when it is considered that the averment is provided for to the effect that there was collusion or fraud between the plaintiff and defendant in the attachment in its being sued out, all thought of the defense contemplated being one conducted in the name and for the defendant is dispelled, and the conclusion is forced, by the provisions for an issue and trial and costs to be adjudged as between the plaintiff and the intervening creditor, that the issue to be made and tried is one between the intervening creditor and the plaintiff, from which the defendant in attachment may stand aloof; and, if he does, and the issue shall be found in favor of the intervener, the attachment is to be dissolved, and thus he will get the benefit of it; but, if the issue shall be found in favor of the attaching creditor, the defendant in the attachment will not be concluded by it, for he was not a party to it.

If the defendant in attachment and the intervening creditor harmonize and make common cause in defense, no reason exists for not trying the issues jointly, but the manifest contemplation of section 174, code 1892, is for an issue to be made on the petition of the intervener, and tried between him and the attaching creditor; and, if the intervening petition avers fraud and collusion between the plaintiff and defendant in attachment in suing it out, it would seem that, while his honor and good faith were assailed, he would be no

party to the issue in which this would be tried, and would be a mere spectator, with the privilege of being a witness if called by one of the parties, but with no right to participate in the case or control the proceedings or appeal from an adverse result.

The record of the trial of this case illustrates the misunderstanding of the change in this procedure wrought by the code of 1892, of which we have written; but the proper result was reached, and no harm was done. The intervening creditors lost because of failure to maintain the allegations of their petition, and, as we have said, they had no right to be heard as to any thing else.

Before any statute on the subject, a creditor of the defendant in attachment, who was a junior attaching creditor or otherwise possessed of such a right as gave him standing in court, might resort to chancery to vacate an attachment which operated as a fraud on him, but he was limited to this, and not permitted to complain of mere irregularities or any thing which the defendant could waive or consent to without wronging him. *Henderson* v. *Thornton*, 37 Miss., 448; *Jones* v. *Moody*, 59 *Ib.*, 327; *Sherman & Davis* v. *Bank*, 66 *Ib.*, 648.

The statute gives *any* creditor the right to intervene and contest as provided, but the extent of the right of the intervening creditor is to accomplish in the court of law what a creditor could effect in a court of chancery, in such matter, before any statute on the subject. If there was a debt due to the attaching creditor, and there existed legal grounds for attachment, the intervening creditor cannot be heard to complain of a recovery by the attaching creditor.

*Affirmed.*